DON'T TEAR IT DOWN, INC., Plaintiff,

v.

PENNSYLVANIA AVENUE DEVELOPMENT CORPORATION, Defendant.

Civ. A. No. 83–2536.

United States District Court,
District of Columbia.

Jan. 31, 1984.

Judgment and Order Feb. 3, 1984.

Irwin Goldbloom, William A. Long, Reed E. Hundt, James F. Rogers (argued and on brief), Latham, Watkins & Hills, Washington, D.C., for plaintiff.

Robert E. McCalley, Mary Schneider Chyun, Pennsylvania Avenue Development Corp., Washington, D.C., Richard A. Stanley (argued and on brief), Asst. U.S. Atty., Civ. Div., Washington, D.C., for defendant.

## MEMORANDUM

FLANNERY, District Judge.

This matter came before the court on plaintiff's motion for a preliminary injunction and for summary judgment, and on defendant's cross-motion for summary judgment. Plaintiff is a citizens' action group that seeks to preserve several historically and architecturally significant buildings which defendant, the Pennsylvania Avenue Development Corporation ("PADC"), plans to tear down. The buildings at issue are located in the Market Space area between 8th and 9th Streets along Pennsylvania Avenue ("Market Space Buildings").[1] Plaintiff argues that

---

1. The "Market Space Buildings" are four buildings located directly to the north of Pennsylvania Avenue, between Eighth and Ninth Streets, N.W.,' the addresses of which are 807 Market Space, N.W., 809–811 Market Space, N.W., 817

PADC has failed to comply with several statutory requirements that must be met prior to demolition of the buildings. The court held on December 21, 1983, however, that PADC has complied with all relevant requirements except a recently passed Congressional notification requirement. Therefore, by a previous Order, the court granted PADC's motion for summary judgment contingent upon PADC's written demonstration that it has fulfilled the new notice requirement and waited the requisite statutory period before proceeding with the demolition of the Market Space Buildings. This Memorandum outlines the court's reasoning for issuing its December 21, 1983 Order.

BACKGROUND

The facts in this case are not in dispute. The Pennsylvania Avenue Development Corporation is a federal entity mandated by statute to prepare and implement a comprehensive plan for the rehabilitation of the area adjacent to Pennsylvania Avenue between the Capitol and the White House, *see* 40 U.S.C. § 871 *et seq.* ("PADC Act"). The area, including the Market Space area, has been declared a National Historic Site, and as such is subject to the provisions of the National Historic Preservation Act, 16 U.S.C. § 470 *et seq.* In 1974, PADC, pursuant to its responsibility under the PADC Act, completed its comprehensive plan for the development of Pennsylvania Avenue, and, following submission to Congress, the Plan became operative in May, 1975 (hereinafter the "1974 Plan"). The 1974 Plan approved by Congress did not set forth any specific recommendations for the Market Space Buildings, but simply stated that the structures "have some architectural significance," Plaintiff's Exhibit A at 40. On March 15, 1977, the PADC Board of Directors adopted an "Historic Preservation Plan," which proposed the retention in place of several buildings in the "Eastern Sector" area around Market Space, but omitted the Market Space Buildings. In June, 1978, in order to avoid any adverse effects the 1974 Plan might have on historic properties and in order to fulfill its obligations under the National Historic Preservation Act, PADC entered into a "Memorandum of Agreement" with the Advisory Council on Historic Preservation. Paragraphs four and six of the Memorandum of Agreement established certain guidelines and procedures for the demolition, relocation, and preservation of historic buildings.

In 1980, PADC began a comprehensive reevaluation of the 1974 Plan with respect to the "Eastern Sector" area. After extensive and detailed study of the area and consultation with interested organizations and the public, PADC issued the "Eastern Sector Report", and in October, 1982 adopted the "Eastern Sector Amendments" to the 1974 Plan. The Amendments proposed a specific development plan for Market Space:

> Under the plan this block would be developed for a mixture of office, residential and retail uses ... The Corporation would also consider development proposals for retaining or relocating the structures along Market Space, provided that this would not interfere with the achievement of the Corporation's housing or other goals in the area....

Defendant's Exhibit H at 10. The Market Space Buildings were not included in the Amendments' list of buildings to be retained and restored in place, but instead were classified as "Group 3" buildings, which meant that it was *recommended,* but not required, that they be retained in place, *id.*

On June 15, 1983, PADC adopted an amendment to the Plan which precipitated this lawsuit. The amendment deleted the language in the Eastern Sector Amendments which recommended that the Market Space Buildings be retained in place, and announced instead that the buildings would be "replaced by new development." PADC has represented that it plans to dismantle and preserve the facades of these buildings for possible future use, Defendant's Memorandum at 1, and to tear the buildings down in accordance with a demolition permit issued by the District of Columbia in

Market Space, N.W., and 819–821 Market Space/301–305 Ninth Street, N.W.

order to permit scheduled preparation of Market Square for the mixed use development contemplated by the Plan. PADC plans to use some of the land occupied by the Market Space Buildings as part of a public park containing a Navy Memorial, and the rest of the space for private "mixed use" development.

On August 29, 1983, plaintiff sought a Temporary Restraining Order in this court to halt the planned demolition of the Market Space Buildings. Plaintiff argued that PADC had not complied with ¶ 4 of the 1978 Memorandum of Agreement and had failed to comply with ¶ 6 of the Memorandum because proper documentation of the buildings had not been received and approved by the Historic American Buildings Survey; that PADC had failed prior to demolition to consult with the National Capitol Planning Commission as required by 40 U.S.C. § 71d(a); that PADC had failed to consult with the Commission on Fine Arts as required by 40 U.S.C. § 121; and that PADC had failed to submit its new demolition plans for Congressional, agency, and local approval as required by 40 U.S.C. § 874(e) for actions that constitute a "substantial change" in the Plan. This court granted plaintiff's motion for a Temporary Restraining Order, and that Order remained in effect pending the December 21, 1983 decision in this case.

Between August 29 and December 21, PADC took several steps in an effort to comply with relevant statutory requirements. On August 31, 1983, it received a letter from the Historic American Buildings Survey indicating that PADC had submitted sufficient documentation of the Market Space Buildings to be in compliance with ¶ 6 of the Memorandum of Agreement, Defendant's Exhibit P. On September 6, 1983, PADC received a letter from the Commission on Fine Arts confirming that it had reviewed and favorably commented on the design concept for Market Square Park, Defendant's Exhibit M. On November 3, 1983, PADC received a report from the National Capitol Planning Commission approving the Market Square plans, Defendant's Exhibit N. On November 8, 1983, the Advisory Council on Historic Preservation advised PADC that it had met its obligations under ¶ 4 of the Memorandum of Agreement, Defendant's Exhibit O. Because the court was convinced that PADC had complied with all requirements save one, it issued an Order on December 21, 1983 permitting demolition of the Market Space Buildings contingent upon satisfaction of the remaining statutory requirement.

DISCUSSION

Plaintiff argues that PADC cannot proceed with its planned demolition of the Market Space Buildings because it still has not met three statutory requirements: First, argues plaintiff, PADC has not complied with paragraphs 4 and 6 of the 1978 Memorandum of Agreement. Second, plaintiff argues that PADC's planned demolition constitutes a "substantial change" in the Plan, and PADC must therefore submit the proposed demolition to Congress, the Secretary of the Interior, and the Mayor of the District of Columbia for their approval. Third, plaintiff argues that even if the proposed demolition does not constitute a "substantial change," it constitutes a "significant action," which, under recently enacted PADC Act amendments, requires that the proposal be submitted to House and Senate Committees and that PADC wait 30 days after such notification before commencing with the demolition. For the reasons set forth below, the court held on December 21, 1983 that PADC has satisfied the requirements of the Memorandum of Agreement and that the demolition is not a "substantial change," but that the action is "significant" and PADC must therefore notify appropriate Congressional Committees of its proposed demolition plans and must wait the requisite statutory period before commencing with the demolition.

A. *PADC has complied with the 1978 "Memorandum of Agreement."*

Plaintiff argues that PADC cannot proceed with demolition of the Market Space Buildings because it has not complied with a "Memorandum of Agreement" entered into on June 15, 1978 between PADC and the Advisory Council on Historic Preserva-

tion. The Memorandum was designed to ensure that PADC would comply with the National Historic Preservation Act, 16 U.S.C. § 470, and the PADC Act, 40 U.S.C. § 871, with regard to its plans for the Market Square area and other areas. The Memorandum provides, in pertinent part, that:

¶ 4. Structures that have been acquired by the PADC and which, under the Pennsylvania Ave. Plan, may be scheduled for future demolition or relocation will be retained in place, whenever possible, until the site they occupy is scheduled for new construction. If PADC determines that such a structure should be demolished or relocated before new construction is scheduled, PADC will, unless an emergency situation exists, consult with the Council and the D.C. SHPO before taking action.

¶ 6. Buildings scheduled to be altered, demolished, or relocated under the Pennsylvania Ave. Plan—1974, accepted by Congress, will be documented to the standards of the Historic American Buildings Survey (HABS) for ultimate deposit in the Library of Congress. PADC will have documentation reviewed and accepted by HABS prior to commencing demolition.

At the time this court issued its Temporary Restraining Order, PADC had not convinced the court that construction had been scheduled for the Market Space area or that the Advisory Counsel and SHPO had been consulted prior to demolition, as required by ¶ 4 of the Memorandum. Further, PADC's documentation of the Market Space Buildings had not been accepted by HABS, as required by ¶ 6.

■ Now, however, PADC has complied with the requirements of both paragraphs 4 and 6. PADC received a letter from HABS approving its documentation of the Market Space Buildings on August 13, 1983, Defendant's Exhibit P, satisfying the requirements of ¶ 6. With regard to ¶ 4, PADC received a letter dated November

18, 1983 from the Advisory Council on Historic Preservation stating that it is the Council's view that PADC can tear down the Market Space Buildings without violating the requirements of ¶ 4 of the Memorandum. *See* Defendant's Exhibit O. Defendant argues that because both parties to the Memorandum of Agreement—PADC and the Council—believe that the demolition can go forward without violating ¶ 4, the court cannot interpret the agreement as an obstacle to the demolition. The court agrees. The Advisory Council is charged with primary responsibility for ensuring that historically significant buildings are not demolished unless proper procedures are followed, and the Memorandum is the vehicle through which such responsibility is exercised. If the Council is satisfied that ¶ 4 has been complied with, the court would be hard pressed to substitute its non-expert judgment for that of the Council's. Further, even if the court were to substitute its interpretation of ¶ 4 for the interpretation of the parties to the agreement, it would find that demolition can proceed. As defendant has pointed out, construction *has* been scheduled for part of the site occupied by the Market Space Buildings. Construction of a Navy Memorial park that will protrude into part of the area currently occupied by the buildings has already begun. The plain language of ¶ 4 merely requires that, whenever possible, buildings be retained in place until new construction is scheduled for the site they occupy. In the court's view, this requirement has been met, and neither ¶ 4 nor ¶ 6 of the Memorandum of Agreement pose an obstacle to demolition of the Market Space Buildings.

B. *Demolition of the Market Space Buildings is not a "substantial change" in the Plan under 40 U.S.C. § 874.*

Under the PADC Act, PADC actions which constitute a "substantial change" in PADC plans must be submitted to the Mayor of the District of Columbia, the Secretary of the Interior, and Congress,[2] 40

---

2. Defendant challenges the constitutionality of the one-house legislative veto provision contained in 40 U.S.C. § 874(d), citing *Immigration*

*and Naturalization Service v. Chada,* —— U.S. ——, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). Although the court believes defendant's argu-

U.S.C. § 874(c)–(e). Plaintiff argues that demolition of the Market Space Buildings constitutes a "substantial change" in the plan, and that PADC cannot, therefore, go forward until appropriate approvals under § 874 have been obtained.

■ The court disagrees on two grounds. First, PADC's decision to demolish the Market Space Buildings cannot properly be considered a *change* of plans at all, let alone a "substantial change." At no time did PADC commit itself to preservation of the Market Space Buildings. The 1974 Plan, approved by Congress, did not call for their retention. The 1977 Historic Preservation Plan did not include the Market Space Buildings in its list of Eastern Sector buildings to be preserved. The 1982 Eastern Sector Amendments called for "mixed use development" of the area, and merely *recommended* that the Market Space Buildings be retained. The June 15, 1983 amendment that provided for the removal of the Market Space Buildings also called for "mixed use development," and simply enacted PADC's decision not to adopt a previous recommendation—a decision well within PADC's discretion, *see* 40 U.S.C. § 874, 875. The court does not believe the rejection of a recommendation can properly be considered a "change" of plans as contemplated by 40 U.S.C. § 874(e). PADC has broad discretion under the Act, and can only be deemed to have "changed" its plan when it seeks to undertake an action that is contrary to a previous *requirement.* Congress recently recognized this distinction between plan "changes" and other "actions" when it enacted the 1983 PADC Act amendments, Pub.L. No. 98–141, 97 Stat. 909 (1983), discussed below.

■ Secondly, even if the court were to consider PADC's proposed demolition of the Market Space Buildings as a "change" in plans, it cannot be considered a "substantial change" as defined by 40 U.S.C. § 874(e). That section states, in pertinent part, that a "substantial change" is

one involving a major alteration in the character or intensity of an existing or proposed use *in the development area* which *in the opinion of the Corporation* [PADC] causes an increase or decrease of 10 per centum or more of the dollar amount of the estimate [of development costs] prepared in accordance with subsection (a)(9) of this section, *or* one which, *in the opinion of the Secretary of the Interior,* affects his responsibilities for the administration, protection, and development of the areas within the Pennsylvania Avenue Historic Site.

40 U.S.C. § 874(e) (emphasis added.) PADC has submitted letters from the Department of the Interior stating that, in the opinion of the Secretary, the demolition of the Market Space Buildings does not constitute a "substantial change" and does not adversely affect the Department's responsibilities for the administration, protection, and development of the area, Defendant's Exhibits J, L. Hence, the only remaining argument to support plaintiff's position that the demolition plans should be considered a "substantial change" is that the action would cause a change of 10% or more in the estimate of development costs for the development area. Plaintiff claims that demolition of the buildings would involve at least a 10% increase in costs *for the Market Square area,* and submits an affidavit from an architect in support of this assertion, Plaintiff's Exhibit H. Based on this, plaintiff argues that the demolition is a "substantial change."

This argument is flawed in at least two aspects. First, the statute makes it clear that a change is substantial only if *in the opinion of PADC* it involves a 10% cost deviation. The opinion of an independent architect is irrelevant. In this case, PADC did not prepare a report stating that, in its opinion, demolition of the buildings would result in a change of more than 10%, and there is nothing in the record that indicates that such is PADC's opinion. In fact, PADC might well believe, as the court does, that the demolition is not technically

---

ment has considerable merit, it need not reach this issue because it does not believe PADC's

demolition plans are a "substantial change," and therefore § 874(d) is not applicable to this case.

**1388**

a *change* of plans at all, which would make cost analysis of the action completely unnecessary. Nevertheless, counsel for PADC has argued during these proceedings that even if the demolition is considered a change of plans, it cannot possibly constitute a 10% change in cost for the entire development area, since the Eastern Sector amendments as a whole, which encompassed a much larger area than that involved here, did not involve a 10% cost change, *see* Defendant's exhibit Q. The court agrees with defendant's reasoning, and in doing so points out the second flaw in plaintiff's method of analyzing the cost deviation involved with the demolition: in order for a change to be "substantial" under the statute, it must create a 10% change in the estimated cost of developing the *entire* Pennsylvania Avenue corridor, not just a 10% deviation in cost for a particular development square, as asserted by plaintiff. The statute states that changes are substantial only if they involve a 10% change in costs associated with "the development area," 40 U.S.C. § 874(e). "Development area" is explicitly defined in § 871(f) as the entire corridor, approximately between the Capitol and the White House, 40 U.S.C. § 871(f). Hence a change is substantial only if it would increase or

decrease the cost of the entire Pennsylvania Avenue redevelopment project by more than 10%. Given the documentation submitted by defendant on the costs associated with the Eastern Sector amendments and the entire plan, *see* Defendant's Exhibit Q, it is inconceivable to the court that the demolition of the Market Space Buildings would create a 10% cost change for the entire plan.[3]

Plaintiff's argument that PADC's proposed demolition of the Market Space Buildings constitutes a "substantial change" and is therefore subject to the notice and approval provisions of § 874 is, for the reasons stated above, clearly without merit.

C. *Demolition of the Market Space Buildings is, however, a "significant action" under recent PADC Act amendments.*

▮▮▮▮ Plaintiff argues that even if the demolition of the Market Space Buildings is not considered a "substantial change" in the PADC plan, it is still a "significant action," and therefore subject to the reporting requirements of the recently enacted Public Lands and National Parks Act of 1983, Pub.L. No. 98–141, 97 Stat. 909 (October 31, 1983).[4] The court agrees. Al-

---

**3.** Plaintiff argues that demolition of the Market Space Buildings would *increase* development costs by "many millions," *see* Plaintiff's Exhibit H at 3–4. According to evidence submitted by defendant, the cost in 1981 dollars of the entire plan, even if the lowest baseline is used, was $889,240,000, Defendant's Exhibit Q. Hence, in order for the demolition of the Market Space Buildings to create a cost increase of greater than 10%, the demolition would have to increase costs by $88,924,001. Even plaintiff does not claim that the demolition would cause such an astronomical increase. The cost increase occasioned by the expansive Eastern Sector Amendments of 1982 was only $67,061,000, according to the highest estimate. Demolition of the Market Space Buildings, only a small part of PADC's current plans for the Eastern Sector, could not possibly create a cost change greater than that occasioned by the Eastern Sector Amendments as a whole. Plaintiff argued hypothetically that the cost of demolition *could* be astronomical if, for example, PADC decides to pave the cleared land with gold. There is, however, no evidence in the record that PADC has these or similar plans.

**4.** The "Public Lands and National Parks Act of 1983," Pub.L. No. 98–141, 97 Stat. 909 (1983) states in § 8(b)(3) as follows:

(b) Section 5(e) of the Pennsylvania Avenue Development Corporation Act of 1972 [40 U.S.C. § 874(e) ] is amended by—

... (3) adding the following new paragraph at the end thereof:

(3) Any alteration, revision, or amendment of the plan and any other action taken by the Corporation which is not a substantial change within the meaning of paragraph (2) but—

(A) which is a significant change in the plan, or which is another significant action taken by the Corporation, and

(B) which relates to housing, any major structure, historic preservation, parks, office space, or retail uses, within the development area

shall not take effect until thirty days after notice of such change or other action has been submitted to the Committee on Interior and Insular Affairs of the United States House of Representatives and to the Committee on Energy and Natural Resources of the United States Senate, unless prior to the expiration of

though the court does not believe the proposed demolition is a "significant *change*" in the plan because retention of the buildings was never required, *see* discussion *supra*, the recent amendment differentiates between "significant *changes*" and "significant *actions*." Demolition of the Market Space Buildings is certainly an "action," so the critical question here is whether the action is "significant."

Neither the House nor the Senate Reports accompanying H.R.1213, which became Pub.L. No. 93–141, contain any guidance on what Congress meant by "significant action," *see* H.R.Rep. No. 98–15, 98th Cong., 2d Sess. at 7, 9 (1983); S.Rep. No. 98–141, 98th Cong., 2d Sess. at 4, 7 (1983), U.S.Code Cong. & Admin.News 1983, 1309. There was no Conference Report, and the floor debate surrounding passage of the bill was quite limited. There was, however, one comment by Representative Seiberling during House floor consideration of H.R. 1213 which points the court in the right direction. Representative Sieberling stated that many of the amendments contained in H.R. 1213, a conglomerate bill dealing with national parks and public lands, are "essentially identical" to measures considered by the House during the 97th Congress, *see* 129 *Cong.Rec.* H911 (daily ed. March 8, 1983) (remarks of Rep. Sieberling). Indeed, during the 97th Congress, the House Committee on Interior and Insular Affairs considered and reported H.R. 5990, which contained a provision that is *identical* to the "significant action" provision eventually enacted by Congress, *compare* H.R.5990, 97th Cong., 2d Sess. § 2 (1983), *reprinted in* H.R.Rep. No. 97–520, 97th Cong., 2d Sess. at 1–2 (1982) *with* P.L. 98–141 § 8(b) (1983). In the House Committee Report accompanying this ante-

cedent legislation, there was an extensive discussion of the meaning of "significant action," and the court believes this discussion should be construed as reflective of Congress' ultimate intent in enacting Pub.L. No. 98–141, given the identical language and the complete absence of contemporaneous legislative history, *see United States v. Enmons*, 410 U.S. 396, 404–405 n. 14, 93 S.Ct. 1007, 1012 n. 14, 35 L.Ed.2d 379 (1973); *see also Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 204, 100 S.Ct. 2601, 2617, 65 L.Ed.2d 696 (1980).

In the House Committee Report accompanying the "significant action" legislation considered during the 97th Congress, the Committee *explicitly* stated that the proposed plans for the Market Square area, including the demolition of the Market Space Buildings, constitute the type of "significant" action by PADC that should be reported to appropriate Congressional committees. The Committee recognized that such actions are not "substantial changes" under the Act, but emphasized that

> ... these proposals represent a cause for serious concern on the part of the Committee, some governmental agencies, and several segments of the public. An example is the huge Memorial Arch proposed for "Market Square" at the intersection of Pennsylvania Avenue and 8th Street, N.W. which would have a major impact on the scale and historical character of the surrounding areas. The proposal apparently could include demolition of several 19th century buildings on the Avenue....

H.R.Rep. No. 97–520, 97th Cong., 2d Sess. at 3 (1982). The Committee goes on to state that

such thirty-day period each of such committees notifies the Corporation in writing that the committee does not object to such change or other action. Such notice to the committees shall include an explanation of the reasons why the change or other action is proposed and a summary of any recommendations received by the Corporation from the Secretary of the Interior, the Mayor of the District of Columbia, or from any interested agency, organization, or individual.

The court notes that this new legislation, which was enacted on October 31, 1983, while this action was pending, is clearly applicable to this case under the rule announced in *Eikenberry v. Callahan*, 653 F.2d 632, 633 (D.C.Cir.1981), *citing Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). PADC is not prejudiced by application of this statute to the instant case, since it had ample time to comply with its provisions before this case was argued, but chose not to do so.

The purpose of this section is to provide Congress with an opportunity to review significant actions before they are taken by the PADC. Examples of significant actions would include a change in the number and size of housing units from the levels approved under the 1974 plan; *demolition or substantial alteration* (including removal of facades) *of any historically or architecturally significant properties* (including but not limited to properties eligible for the National Register of Historic Places); and any proposed new structures, such as the memorial arch on Market Square, which would have an impact on the development site. If there is any doubt as to whether an action may be sufficiently significant to report, it should be reported.

*Id.* at 5 (emphasis added).

Given this explicit language, the court would be hard pressed to hold that demolition of the Market Space Buildings is not a "significant action." Defendant's argument that the new reporting requirement would be unduly burdensome and would strip PADC of statutorily granted discretion if it is interpreted to include as "significant action" the proposed demolition of the Market Space Buildings is exaggerated and incorrect. In light of the explicit legislative history applicable to this case, the court cannot interpret the statute disingenuously simply to preserve total PADC discretion and flexibility. Congress has determined that for certain PADC actions, the inconvenience to PADC caused by a reporting and 30-day waiting period requirement is outweighed by Congress' oversight responsibilities. Although the committee language quoted above makes it clear that the demolition of an historically or architecturally significant building and certain other actions are "significant" enough to mandate PADC reporting to Congress, it also shows that Congress does not intend that PADC be required to report to Congress and wait 30 days before acting on the myriad of other important decisions PADC makes regularly. Congress' intent was not to hamstring PADC in exercising its discretionary role as administrator of the Pennsylvania Avenue Development project, but merely to require PADC reporting in certain exceptional cases, such as this case.

Because the court believes that demolition of the Market Space Buildings is a "significant action" within the meaning of Pub.L. No. 98–141, PADC was ordered to report its demolition plans to the appropriate Congressional committees in accordance with Pub.L. No. 98–141, § 8(b)(3). PADC has informed the court that such reports were submitted to the appropriate committees on January 5, 1984. Unless the committees inform PADC of their approval of the demolition plans before the expiration of the 30-day waiting period, *see* Pub.L. No. 98–141 § 8(b)(3), and PADC informs the court of such approval, the court will issue an Order at the end of the period—on February 4, 1984—certifying that the waiting period has expired and PADC may proceed with the planned demolition. This case will be dismissed upon issuance of that Order.

### JUDGMENT AND ORDER

By a December 21, 1983 Order and recently filed Memorandum, this court held that the Pennsylvania Avenue Development Corporation's (PADC) motion for summary judgment would be granted upon this court's satisfaction that PADC had satisfied recently enacted reporting and waiting period requirements, *see* Pub.L. No. 98–141, 97 Stat. 909 § 8 (1983). On January 5, 1984, PADC informed the court that the mandated report of its plans to tear down the Market Space Buildings had been submitted that day to the appropriate Congressional committees. The statutorily required 30-day waiting period therefore expires on Saturday, February 4, 1984. For the reasons set forth in the court's Memorandum Opinion, PADC will have met the requirements necessary for demolition as of February 4, 1984, and may proceed with its demolition plans at any time thereafter. Therefore, after careful consideration of the motions filed in this case, the oppositions thereto, the arguments of counsel, defendant's January 5, 1984 Notice of

Filing, and the entire record in this case, it is, by the court, this 3rd day of February, 1984, hereby

ORDERED that PADC may proceed with its plans to demolish the Market Space Buildings on or after February 4, 1984; and it is further

ORDERED, ADJUDGED and DE-CREED that defendant's motion for summary judgment is granted and this case is dismissed with prejudice.